NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0460n.06
Filed: June 29, 2007

**No. 05-4221**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| LOIS JOHNSON, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| DONALD H. RUMSFELD, Secretary, Department | ) | OHIO |
| of Defense, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER and GILMAN, Circuit Judges; ZATKOFF, District Judge.[*]

**SILER**, Circuit Judge. Lois Johnson appeals the district court's grant of summary judgment in favor of the defendant on her hostile work environment, failure to promote, and constructive discharge claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. We AFFIRM.

I.

Johnson was a civilian employee at Rickenbacker Air National Guard Base. In 1993, Rickenbacker closed and Johnson was transferred to the Defense Finance and Accounting Service ("DFAS") to fill a GS-11 Position Classification Specialist vacancy. Johnson asserts that she was subjected to harassment "practically from the day that she set foot in DFAS" until she was allegedly

---

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District of Michigan, sitting by designation.

forced to retire in 1997. Specifically, she claims she suffered a hostile work environment on account of her age and in retaliation for engaging in activities protected by Title VII;[1] she was denied promotional opportunities; and ultimately, she was constructively terminated.

Johnson believes that she was unwelcome at DFAS even before her arrival. She alleges that Human Resource Director Mahlon Boyer challenged her transfer not because she did not possess the necessary qualifications, as he stated, but because of her prior successful suit against the Air Force. She further alleges that when the zoning coordinator demanded that DFAS hire her, Boyer required her to attend a basic training program, even though other transferring employees were not asked to do so. According to Johnson, Boyer also made harassing comments throughout her tenure at DFAS, including: informing her that filing a complaint was a "career ending move," calling her "disloyal" for taking such action, and describing her as being "out of the fold" because of her complaints.

Johnson also describes instances of harassment by other DFAS employees. A fellow employee allegedly screamed at her for not placing a file in a basket. Another employee put retirement documents in her inbox on several occasions. Yet another co-worker purportedly told her that her office was going to be placed downstairs in the back room office of the cafeteria because she was older and that they were going to keep the younger people upstairs. Her co-workers also allegedly referred to her as "the woman with the money" and as a "sack full of money" because of her award from her prior suit against the Air Force.

---

[1]While employed at Rickenbacker, Johnson filed Equal Employment Opportunity ("EEO") charges alleging sex-based discrimination and retaliation based on an alleged hostile work environment, as well as her suspension and termination. Following a bench trial, Johnson was awarded back pay and reinstatement.

In 1995, Johnson contacted the DFAS EEO office regarding her claims of discrimination. Three formal complaints followed: one each in 1995, 1996, and 1997. In each of these complaints, Johnson asserted that she had been discriminated against in promotional opportunities. In her first complaint, she alleged that she was consistently passed over for promotions to GS-12 positions. Although she insists that her complaint required the EEO office to investigate *all selections* for GS-12 positions, the EEO office narrowed the investigation to "positions within the Human Resources Directorate during the last six months."

In support of her constructive discharge claim, Johnson claims that Boyer lied to her in order to force her to retire. Boyer allegedly told her that there would no longer be any GS-11 positions. She understood that comment to mean that she would no longer have a job at DFAS. After Johnson retired, however, GS-11 positions remained within the Human Resources department at DFAS. She also alleges that Boyer only gave her a few days to decide whether to retire even after she requested more time to make her decision. When she ultimately accepted retirement, she initially wrote on the form that it was "under protest," but removed the comment when Boyer allegedly threatened to deny Johnson her bonus.

Furthermore, Johnson asserts that her working conditions were so intolerable that any reasonable person would have felt compelled to retire. She claims that she was denied sick leave, was denied awards and not recognized for her work, was continually denied promotions, and "became so ill because of the harassment that she had to retire for the sake of her health."

The magistrate judge assigned to the case granted in part defendant's motion for summary judgment on Johnson's claims of hostile work environment and constructive discharge. The court

also dismissed several of her promotion claims. The remaining claims – (1) age discrimination based on Johnson's non-selection for the Employee Relations Specialist position, (2) retaliation based on Johnson's non-selection for the Employee Relations Specialist position, and (3) retaliation based on Johnson's non-selection for the Equal Employment Opportunity Officer position – were tried to a jury, which returned a verdict in favor of the defendant.

## II.

We review a district court's grant of summary judgment de novo, construing the record in the light most favorable to Johnson and resolving all reasonable inferences in her favor. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999).

### A. Hostile Work Environment

Johnson argues that she demonstrated that the harassment she endured was sufficiently pervasive to alter the conditions of her employment. She concedes that the harassment was not severe, but claims that it was pervasive because she was continually harassed throughout the nearly four years that she worked for DFAS. We disagree.

Under Title VII, an actionable hostile environment claim exists only if workplace harassment is "so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)) (internal quotations omitted). To determine whether the environment is sufficiently "hostile" or "abusive," we examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993). "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" do not amount to a hostile work environment. *Faragher,* 524 U.S. at 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 82 (1998)).

Johnson's claim fails because she cannot show pervasive harassment sufficient to alter the conditions of her employment. She submits a laundry list of harassing statements by co-workers, but does not explain how these comments differ from "sporadic use of abusive language" not protected by Title VII. *See Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 352 (6th Cir. 2005). Johnson neither alleges any comments that were physically threatening, nor provides any evidence as to the frequency of the co-workers' inappropriate remarks other than to claim she was "continually" harassed. Comparing the conduct alleged here to conduct considered by this court in prior cases, Johnson has not alleged pervasiveness rising to the level of Title VII harassment. *See, e.g.*, *Burnett v. Tyco Corp.,* 203 F.3d 980, 985 (6th Cir.2000) (finding three allegations of sexual harassment over six months insufficiently pervasive because they did not qualify as "commonplace, ongoing, or continuing").

## B. Failure to Promote

Johnson also appeals the trial court's grant of summary judgment on her failure-to-promote claims. She contends that her 1995 formal complaint was not limited to her non-selection for human resources GS-12 positions, but included claims for non-selection to any GS-12 position. The district court accepted the EEO office's limited formulation of Johnson's internal equal employment charges

and held that Johnson was precluded from litigating claims concerning eleven positions[1] outside of human resources.

Although trial courts are to interpret EEO complaints "liberally . . . to encompass all claims 'reasonably expected to grow out of the charge of discrimination,'" *Randolph v. Ohio Dept. of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (citing *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)), this "does not mean . . . that plaintiffs are excused from filing charges on a particular discrimination claim before suing in federal court." *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).

Here, the only guidance Johnson's formal complaint gave to the EEO for investigation of her claims of discrimination is that her non-selection for GS-12 positions occurred sometime prior to September 13, 1995. Because she stated that she was not promoted "while I have been an employee working within the Human Resources office at DFAS," it was reasonable that the EEO office would infer that Johnson wanted to investigate non-selection for promotions within that department. Moreover, Johnson never responded to a letter the EEO office sent her to confirm that it had correctly identified the claim she presented.

## C. Constructive Discharge

Johnson's final claim is that the trial court improperly granted summary judgment on her constructive discharge claim. An employee can demonstrate a prima facie case of constructive

---

[1]Johnson only provides specific details as to two of these eleven positions – the EEO specialist position filled by Carol Scott on September 10, 1995, and the EEO specialist position filled by Vaughn Thomas on October 8, 1995.

discharge by showing that the employer "deliberately create[d] intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999). We have also held that choosing retirement when there was "no definite prospect of continued employment with the company" constitutes constructive discharge. *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1128 (6th Cir. 1998).

Johnson presents both theories of constructive discharge. She supports her claim of intolerable conditions with the same facts presented for her hostile work environment claim. Because this conduct did not create a hostile work environment, the claim necessarily fails to show working conditions so intolerable that a reasonable person would feel compelled to resign. *See Plautz v. Potter*, 156 Fed. App'x 812, 2005 WL 3479840, at *7 (6th Cir. 2005).

Next, Boyer's alleged comment – that "there were not going to be any GS-11s" – is insufficient to show that Johnson's resignation was involuntary. Johnson claims that she understood his comment to mean her position was being eliminated, but she never attempted to confirm his statement. She presents no other evidence that she had "no definite prospect of continued employment." As we stated in *Agnew v. BASF Corp.*, 286 F.3d 307 (6th Cir. 2002), "[a]n employee who quits a job in apprehension that conditions may deteriorate later is not constructively discharged. Instead, the employee is obliged 'not to assume the worst, and not to jump to conclusions too fast.'" *Id.* at 310 (quoting *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987)).

AFFIRMED.