[Cite as *Nelson v. Schafer*, 2013-Ohio-5836.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| SCOT NELSON, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2013-P-0035** |
| SCOTT J. SHAFER, | : | |
| Defendant, | : | |
| CINCINNATI INSURANCE COMPANY, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2010 CV 0841.

Judgment: Affirmed.

*Timothy E. Bellew,* P.O. Box 427, Girard, OH 44420 (For Plaintiffs-Appellants Scot Nelson and Luke M. Nelson).

*Mark S. Hura,* The Cincinnati Insurance Co., 50 South Main Street, Suite 615, Akron, OH 44308 (For Defendant-Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} Scot and Luke Nelson appeal from the grant of summary judgment by the Portage County Court of Common Pleas to Cincinnati Insurance Company on their complaint for uninsured motorist coverage and bad faith. We affirm.

{¶2} On the morning of February 27, 2009, Luke Nelson was driving his father Scot's 1999 Chevrolet pickup truck on State Route 5 in Portage County, when he was struck at the intersection with State Route 59 by Staff Sgt. Scott Shafer, United States Army. Sgt. Shafer was driving a red Impala issued to him by the army for his work as a recruiter in Erie, Pennsylvania. Happily, it appears that both young men were uninjured, but the Nelsons' pickup truck was a total loss. Sgt. Shafer was supposed to be going to work from his residence in Erie, but instead was returning from a visit to his mother in Dover, Ohio. He was not authorized to use his army vehicle for the trip.

{¶3} The army denied liability since Sgt. Shafer was using his army vehicle outside the scope of his employment. The army did offer the Nelsons $1000 under the Non-Scope Claim Act, 10 U.S.C. 2737. State Farm, the automobile insurer for Sgt. Shafer's parents, denied coverage under the "non-owned car" provision of its policy. Thus, the Nelsons filed their UM and bad faith claim against their own insurer, Cincinnati Insurance.

{¶4} Resolution of the case was delayed while Sgt. Shafer was deployed overseas. January 23, 2013, Cincinnati Insurance moved the trial court for summary judgment, arguing that Sgt. Shafer's army vehicle did not qualify as an uninsured motor vehicle under the Nelsons' policy. February 14, 2013, the Nelsons filed their opposition to the summary judgment motion, arguing that the Cincinnati Insurance policy was ambiguous regarding whether Sgt. Shafer's army vehicle was an uninsured motor vehicle. February 22, 2013, the trial court granted Cincinnati Insurance's motion. By a judgment entry filed March 18, 2013, the trial court found there was no just reason to delay an appeal, pursuant to Civ.R. 54(B). This appeal timely ensued.

**{¶5}** "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.,* 66 Ohio St.3d 64, 66, * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See e.g.* Civ.R. 56(C).

**{¶6}** "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.,* 64 Ohio St.2d 116, 121, * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 359, * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.,* 11th Dist. No. 2002-A-0061, 2003 Ohio 6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-252, * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, * * * (1996)." (Parallel citations omitted.) *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6.

**{¶7}** The Nelsons raise a single assignment of error on appeal: "The trial court committed prejudicial error when it granted Appellee Cincinnati Insurance Company's

3

Motion for Summary Judgment when relevant portions of the insurance policy language was ambiguous and contradictory on its face, and otherwise contrary to law and unenforceable."

**{¶8}** "'An insurance policy is a contract whose interpretation is a matter of law.' *Cincinnati Ins. Co. v. CPS Holdings, Inc.,* 115 Ohio St.3d 306, 2007-Ohio-4917, * * *, ¶7, quoting *Sharonville v. Am. Emps. Ins. Co.,* 109 Ohio St.3d 186, 2006- Ohio-2180, * * *, ¶6. In interpreting such contracts, 'the role of the court is to give effect to the intent of the parties to the agreement.' (Citations omitted.) *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, * * *, ¶11. In *Westfield Ins. Co. v. Galatis,* the Ohio Supreme Court outlined the analysis required: 'We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, * * *, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, * * *, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.* (Tex.2000), 22 S.W.3d 417, 423. *Id.*'" (Parallel citations omitted.) *Thom v. Perkins Twp.*, 6th Dist. Erie No. E-10-069, 2012-Ohio-1568, ¶12.

**{¶9}** When interpreting an insurance contract, "any ambiguities will be construed strictly against the insurer and liberally in favor of the insured." *Marusa v. Erie Ins. Co.*, 136 Ohio St.3d 118, 2013-Ohio-1957, ¶8.

4

{¶10} In support of their contention that the Cincinnati Insurance policy is ambiguous, the Nelsons first point to sub-part A of the UM "Insuring Agreement," which provides, in pertinent part:

{¶11} "A. 'We' will pay compensatory damages which a 'covered person' is legally entitled to recover from the owner or operator of:

{¶12} "1. An 'uninsured motor vehicle' as defined in SECTIONS 1., 2., and 4. of the definition of an 'uninsured motor vehicle' because of 'bodily injury':

{¶13} "a. Sustained by a 'covered person'; and

{¶14} "b. Caused by an accident.

{¶15} "* * *

{¶16} "3. An 'uninsured motor vehicle' as defined in SECTIONS 1. and 4. of the definition of an 'uninsured motor vehicle' because of 'property damage' caused by an accident if the Declarations indicates that both 'bodily injury' and 'property damage' Uninsured Motorists Coverage applies."

{¶17} The Nelsons next direct our attention to sub-part E of the "Insuring Agreement." This provides, in pertinent part:

{¶18} "E. 'Uninsured motor vehicle' means a land 'motor vehicle' or 'trailer':

{¶19} "1. For which no liability bond or policy applies at the time of an accident."

{¶20} Finally, the Nelsons point to the policy language relied on by Cincinnati Insurance to determine that Sgt. Shafer's army vehicle was not an uninsured motor vehicle. This language is also contained in sub-part E of the "Insuring Agreement," and immediately follows Section 4. It states:

{¶21} "However, 'uninsured motor vehicle' does not include any 'motor vehicle' or equipment:

{¶22} "* * *

{¶23} "2. Owned by any governmental unit or agency, unless the owner or operator of the 'uninsured motor vehicle' has:

{¶24} "a. An immunity under the Ohio Political Subdivision Tort Liability Law and/or diplomatic immunity, and

{¶25} "b. The 'insured' would be legally entitled to recover from the owner or operator but for the immunity described above." (Emphasis sic.)

{¶26} Obviously, the United States Army is a governmental unit or agency; is not a political subdivision of Ohio; and is not an agent of a foreign power.

{¶27} In sum, the Nelsons contend that sub-part A of the "Insuring Agreement" limits the definition of what is an uninsured motor vehicle to Sections 1 through 4 of sub-part E, and that the language relied on by Cincinnati Insurance to deny UM coverage is not included in those sections. Thus, they contend the policy is ambiguous, and must be construed in their favor against Cincinnati Insurance.

{¶28} We respectfully disagree that an ambiguity exists. Quite simply, Sections 1 through 4 of sub-part E define what *is* an uninsured motor vehicle under the policy. That portion of sub-part E commencing with "However, 'uninsured motor vehicle' does not include * * *," and relied on by Cincinnati Insurance, defines what is *not* an uninsured motor vehicle. These are separate (if related) concepts. The policy is unambiguous, because its plain language can be given a definite legal meaning. *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶11.

6

{¶29} The assignment of error lacks merit. The judgment of the Portage County Court of Common Pleas is affirmed. It is the further order of this court that appellants are assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.


CYNTHIA WESTCOTT RICE, J.,

THOMAS R. WRIGHT, J.,

concur.