[Cite as *Ruez v. Lake Cty. Educational Serv. Ctr.*, 2017-Ohio-4125.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| PATRICIA RUEZ, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-L-125** |
| LAKE COUNTY EDUCATIONAL SERVICE CENTER, | : | |
| | : | |
| Defendant-Appellee. | | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2015 CV 002171.

Judgment: Affirmed.

*Gerald R. Walker,* Redmond, Walker & Murray, 174 North St. Clair Street, Painesville, OH 44077 (For Plaintiff-Appellant).

*David Kane Smith,* Smith Peters & Kalail Co., L.P.A., 6480 Rockside Woods Blvd., South, Suite 300, Cleveland, OH 44131 and *Sarah E. Kutscher,* Smith Peters & Kalail Co., L.P.A., 3 Summit Park Drive, Suite 400, Cleveland, OH 44131 (For Defendant-Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} Patricia Ruez appeals from the grant of summary judgment by the Lake County Court of Common Pleas to the Lake County Educational Service Center ("LCESC") in her action for breach of contract and age discrimination. Finding no reversible error, we affirm.

{¶2} Ms. Ruez was employed by LCESC as an intervention specialist, working with pre-school children with special needs, on an itinerant assignment. During the 2014-2015 school year, she worked 2.5 days per week in the Kirtland School District, and 2.5 per week in the Fairport Harbor School District.

{¶3} Tippi Foley is Director of Early Childhood for LCESC. In her affidavit in support of LCESC's motion for summary judgment, Ms. Foley testified that school districts contract with LCESC for services annually, and make their own determination of the extent of services required. Ms. Foley further testified she was informed by the Kirtland and Fairport Harbor school districts they would require fewer hours of pre-school intervention in the 2015-2016 school year. As a consequence, LCESC decided to cut Ms. Ruez's days for the upcoming school year from 183 to 72. LCESC's board voted to this effect June 2, 2015; she received the notice June 9, 2015.

{¶4} In her affidavit, Ms. Foley testified she kept looking for extra hours for Ms. Ruez, who did not respond to texts. She testified Ms. Ruez inquired about a full-time teaching position which had opened, and that she responded the position paid less than what Ms. Ruez formerly made, after which Ms. Ruez made no further inquiry. Finally, Ms. Foley learned in early August 2015 that Ms. Ruez had retired, and procured replacement teachers.

{¶5} Ms. Ruez filed her complaint alleging breach of contract and age discrimination December 18, 2015. LCESC answered, and discovery ensued. LCESC filed for summary judgment September 26, 2016, attaching the affidavits of Ms. Foley and Brian Bontempo, Superintendent of LCESC. Ms. Ruez filed her brief in opposition October 6, 2016, and LCESC replied October 14, 2016. By a judgment entry filed

2

November 7, 2016, the trial court granted LCESC's motion. It found that LCESC had not breached its contract with Ms. Ruez. It found both that she had failed to make a prima facie case of age discrimination, and that LCESC had articulated a legitimate business reason for the reduction in her hours – i.e., reduction in funding from the school districts requiring Ms. Ruez's services.

{¶6}   Ms. Ruez timely noticed appeal, assigning three errors.

{¶7}   "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See e.g.* Civ.R. 56(C).

{¶8}   "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121 (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. No. 2002-A-0061, 2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

3

242, 251-252 (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996)." (Parallel citations omitted.) *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6.

{¶9} Ms. Ruez's first assignment of error reads: "The trial court erred in granting summary judgment on Plaintiff-Appellant's breach of contract claim based on its reasoning that the Defendant-Appellee properly suspended Plaintiff-Appellant's contract under R.C. 3319.17."

{¶10} "A contract is generally defined as a promise or set of promises actionable upon breach. *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, * * *, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414. To prove a breach of contract claim, a plaintiff must show the existence of a contract, performance by the plaintiff, a breach by the defendant, and damage or loss to the plaintiff. *Allied Erecting & Dismantling Co. v. Uneco Realty Co.* (2001), 146 Ohio App.3d 136, 142, * * *. The construction of written contracts is a matter of law. *Long Beach Assn., Inc. v. Jones* (1998), 82 Ohio St.3d 574, 576, * * *." *McCamoh-Hunt Ins. Agency, Inc. v. Medical Mutual of Ohio*, 7th Dist. Mahoning No. 02 CA 23, 2003-Ohio-1221, ¶10.

{¶11} In this case, there is no question whether a contract existed between the parties: the only question is whether LCESC breached it. In finding no breach, the trial court relied partly on R.C. 3319.17, "Reduction in number of teachers – restoration," citing specifically to R.C. 3319.17(B)(1), which provides, in pertinent part:

{¶12} "(B) When, for any of the following reasons that apply to any * * *

4

educational service center, the board decides that it will be necessary to reduce the number of teachers it employs, it may make a reasonable reduction:

{¶13} "(1) In the case of any * * * service center, return to duty of regular teachers after leaves of absence including suspension of schools, territorial changes affecting the * * *center, or *financial reasons*[.]" (Emphasis added.)

{¶14} That is, since the school districts Ms. Ruez served were cutting hours for pre-school intervention specialists for the 2015-2016 school year, the statute authorized LCESC to cut the number of such teachers, or, at least, to reduce their hours, as it did in her case.

{¶15} On appeal, Ms. Ruez makes two arguments. First, she contends the controlling division of R.C. 3319.17 is R.C. 3319.17(B)(3), which provides, in pertinent part:

{¶16} "(B) When, for any of the following reasons that apply to any * * * educational service center, the board decides that it will be necessary to reduce the number of teachers it employs, it may make a reasonable reduction:

{¶17} "* * *

{¶18} "(3) In the case of any governing board of a service center providing any particular service directly to pupils pursuant to one or more interdistrict contracts requiring such service, reduction in the total number of pupils the governing board is required to provide with the service under all interdistrict contracts as a result of the termination or nonrenewal of one or more of these interdistrict contracts[.]"

{¶19} Thus, R.C. 3319.17(B)(3) allows an educational service center to reduce the number of teachers it employs when a school district terminates or fails to renew its

5

contract with the service center. As Ms. Ruez notes, neither of the school districts to which she had been assigned – Kirtland or Fairport Harbor – terminated its contract with LCESC. Without exactly saying so, Ms. Ruez implies that LCESC could only reduce her hours if one of the school districts had terminated its contract with LCESC.

{¶20} We respectfully disagree. As the trial court noted, R.C. 3319.17(B)(1) authorized LCESC to take the action it did due to the reduction in funding for Ms. Ruez's function by the Kirtland and Fairport Harbor school districts. R.C. 3319.17(B)(3) is inapplicable. Further, Ms. Ruez did not make this argument to the trial court, and it is waived on appeal. *Warren v. Morrison*, 10th Dist. Franklin No. 16AP-372, 2017-Ohio-660, ¶11, fn. 1, citing *Camp v. Star Leasing Co.*, 10th Dist. Franklin No. 11AP-977, 2012-Ohio-3650, ¶66.

{¶21} Ms. Ruez further argues LCESC was required to hire her (evidently) for the full-time position which became open, but which she did not pursue. In doing so, she cites to R.C. 3319.17(C), which provides, in pertinent part: "teachers whose continuing contracts are suspended by any board pursuant to this section shall have the right of restoration to continuing service status by that board if and when teaching positions become vacant or are created for which any of such teachers are or become qualified." We respectfully find this provision inapplicable. As noted, Ms. Ruez, while aware of the vacancy, did not pursue it. Further, R.C. 3319.17(C) applies only to reductions made by cities, exempted villages, local and joint vocational school boards – not to educational service centers. Further, Ms. Ruez did not make this argument to the trial court, and it is waived on appeal. *Warren*, *supra*, at ¶11, fn. 1.

{¶22} Consequently, we find the trial court correctly applied R.C. 3319.17(B)(1)

6

in determining LCESC did not breach its contract with Ms. Ruez. Like the trial court, we also note the following provision from her contract:

{¶23} "Continued employment under this contract is contingent upon state, federal, and/or local funding. Should the state, federal, and/or local funds available for the employment of the undersigned Teacher are terminated, reduced, interrupted, or otherwise made unavailable to the Lake County Educational Service Center, said [LCESC] may suspend this contract for the remainder of its term."

{¶24} On this basis alone, LCESC was within its contractual rights to suspend Ms. Ruez's contract, and offer her one for reduced hours.

{¶25} The first assignment of error lacks merit.

{¶26} Ms. Ruez states her second assignment of error is different in the table of contents of her brief, and the body of that document. The initial version reads: "The trial court committed reversible error by granting summary judgment on Plaintiff-Appellant's age discrimination claim." The second version reads: "The trial court erred in granting summary judgment on Plaintiff-Appellant's age discrimination claim based on its reasoning that Plaintiff-Appellant failed to set forth a prima facie case of age discrimination." We treat these in consolidated fashion.

{¶27} Ms. Ruez alleges age discrimination in violation of R.C. 4112.14(A), which provides:

{¶28} "(A) No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee."

7

{¶29} There is no direct evidence of age discrimination in this case: it is an "indirect evidence" case. In *Molnar v. Klammer*, 11th Dist. Lake No. 2004-L-072, 2005-Ohio-6905, ¶14, this court stated:

{¶30} "In an indirect evidence case, there is a four-part test used to establish a prima facie case of age discrimination. *Kohmescher* [*v. Kroger Co.*]*,* 61 Ohio St.3d 501, * * *, syllabus (explaining and modifying in paragraph one of the syllabus in *Barker v. Scovill, Inc.* (1983), 6 Ohio St.3d 146, * * *). See, also, *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, * * *. The four-part test requires a plaintiff to show that she '(1) was a member of the statutorily protected class, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or the discharge permitted the retention of, a person of substantially younger age.' *Coryell v. Bank One Trust Co. N.A.,* 101 Ohio St.3d 175, * * *, 2004–Ohio–723, ¶20. See, also, *Kohmescher,* 61 Ohio St.3d 501, * * *, syllabus. Defendant-employer may then overcome the presumption inherent in the prima facie case by propounding a legitimate, nondiscriminatory reason for the plaintiff's discharge. *Barker,* 6 Ohio St.3d 146, * * *. Finally, the plaintiff must be allowed to show that the rationale set forth by the employer was only a pretext for unlawful discrimination. Id." (Parallel citations omitted.)

{¶31} In this case, the parties agree Ms. Ruez carried her burden of making a prima facie case of discrimination regarding the first and third parts of the test: she is a member of the protected class under R.C. 4112.14(A), and she was qualified for the job. Further, the trial court found there was a genuine issue of material fact regarding whether Ms. Ruez was replaced by someone substantially younger than her, which meets the fourth part of the test. But the trial court found she had not established she

was discharged, either actually, or constructively. Thus, she failed to fulfill the third part of the test.

**{¶32}** "Constructive discharge" is found when "an employer's actions [make] working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 588-589 (1996). Ms. Ruez argues the reduction in her hours was so extreme as to constitute constructive discharge. She cites to three cases in support.

**{¶33}** In *Oleksiak v. John Carroll Univ.*, 8th Dist. Cuyahoga No. 84639, 2005-Ohio-886, Mr. Oleksiak was the 68-year-old director of the university's Office of Multi-Cultural Affairs. *Id.* at ¶2. The university began a national search for a new director. *Id.* at ¶7. Mr. Oleksiak asked the academic vice president of the university if he stood a chance of retaining his job if he applied to the search committee, and alleged he was told either, "I guess not," or "no." *Id.* Mr. Oleksiak finished the year, and received an additional two months pay. *Id.* at ¶8. He was required to sign a resignation letter drafted by the university. *Id.* He was replaced by a much younger African-American woman. *Id.* at ¶9.

**{¶34}** Mr. Oleksiak brought an action for reverse race discrimination and age discrimination against the university and its president. *Oleksiak* at ¶1. The trial court granted defendants summary judgment on both claims. On appeal, the Eighth District held Mr. Oleksiak had created a genuine issue of material fact regarding whether the university had constructively discharged him, since its actions, in telling him he would not receive genuine consideration for retaining his position had a "materially adverse effect" on his salary and status at the university. *Id.* at ¶32.

9

**{¶35}** We find the facts in *Oleksiak* distinguishable from those herein. While Ms. Ruez certainly suffered a materially adverse effect on her salary and status at LCESC through the loss of hours, she was not, effectively, required to retire, as was Mr. Oleksiak. Rather, Ms. Foley kept trying to find increased hours for her.

**{¶36}** Next, Ms. Ruez presents *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121 (6th Cir.1998). Mr. Scott was a 61-year-old operations manager for Goodyear in Cleveland, Ohio. *Id.* at 1123. During a company reorganization, his job was eliminated. Other operations managers younger than him were given new jobs. *Id.* at 1124. He on the other hand, was given three options: (1) accept layoff status with no benefits and no possibility of recall; (2) accept layoff status with regular supplemental unemployment benefits, and remain under consideration for recall if a new position materialized; (3) accept retirement, with a lump sum payment up front, monthly retirement checks, and benefits. *Id.* He chose the third option, then brought actions under both the federal and Ohio age discrimination acts. *Id.*

**{¶37}** Mr. Scott proceeded under a constructive discharge theory. *Scott* at 1123. The district court granted Goodyear summary judgment on his age discrimination claims. *Id.* at 1125. The Sixth Circuit reversed and remanded. It laid great emphasis on the fact that Goodyear refused to tell Mr. Scott whether he stood a chance of reassignment, thus giving him a reasonable subjective belief he would not be recalled if he chose layoff. *Id.* at 1128. It then held:

**{¶38}** "Scott thus chose retirement having no definite prospect of continued employment with the company. Therefore, where ordinary charges of constructive discharge typically entail a decision on the part of the employee to resign in light of an

10

intolerable working environment or some such allegation, Scott decided upon the option best suited to his needs with the understanding that he did not have the option of continued employment. For that reason, we find that the doctrine of constructive discharge applies in this case." *Scott* at 1128.

{¶39} *Scott* is distinguishable from this case. In *Scott*, appellant had no reasonable expectation of future employment with Goodyear. In this case, Ms. Ruez actually had continued employment with LCESC, though with reduced hours. Further, Ms. Foley continued to seek more hours for Ms. Ruez until she learned of the latter's retirement.

{¶40} Finally, Ms. Ruez cites *Johnson v. Rumsfeld*, 238 Fed.Appx. 105 (6th Cir.2007). Following retirement, Ms. Johnson brought an action alleging several claims against her former employer, the Department of Defense, including one for constructive discharge. *Id.* at *108. The district court's magistrate granted defendant summary judgment on her constructive discharge claim. *Id.* That claim was based on an alleged comment by her superior that her classification (GS-11) was to be eliminated, which she interpreted as meaning she would be fired. *Id.* at 109. Citing to *Scott*, *supra*, the Sixth Circuit concluded this was insufficient evidence to show she had no prospect of future employment with defendant.

{¶41} *Johnson* gives Ms. Ruez no comfort. She had employment at the time she retired, and the prospect of increased hours in the future.

{¶42} Ms. Ruez failed to establish a prima facie case of age discrimination. The second assignment of error lacks merit.

{¶43} Ms. Ruez's third assignment of error reads:

11

{¶44} "The trial court erred in granting summary judgment on Plaintiff-Appellant's age discrimination claim based upon its further finding that even if Plaintiff-Appellant had established a prima facie case, Plaintiff-Appellant failed to demonstrate a genuine issue of material fact that Defendant-Appellee's proffered business reason was pretextual."

{¶45} While the trial court held Ms. Ruez had not made a prima facie case of age discrimination, it further held she had not established that LCESC's reason for suspending her contract and offering her a new one with fewer hours was pretextual, since funding from the Kirtland and Fairport Harbor school districts for the services she provided had been cut. As support for her argument she did establish a genuine issue of material fact on this issue, Ms. Ruez cites to the deposition of LCESC's superintendent, Mr. Bontempo. Unfortunately, that deposition is not in the record before us. A reading of the trial court's docket indicates it was never filed with that court. We cannot consider evidence that is not part of the record.

{¶46} The third assignment of error lacks merit.

{¶47} The assignments of error lacking merit, the judgment of the Lake County Court of Common Pleas, is affirmed.


DIANE V. GRENDELL, J.,

TIMOTHY P. CANNON, J.,

concur.

12