OPINION
{¶ 1} Appellants, Sat Adlaka and Karen Adlaka, appeal the summary judgment entered in favor of appellees, Valley Electrical Consolidated, Inc. ("VEC") and Molex, Inc. ("Molex"), by the Trumbull County Court of Common Pleas on their action for *Page 2 
breach of contract and fraud. At issue is whether there is a genuine issue of material fact on either or both of appellants' claims. For the reasons that follow, we affirm.
 {¶ 2} In or about 1995, appellants began construction of a new 10,000 square foot home on Muirfield Drive, in Canfield, Ohio. While the home was being built, Mr. Adlaka noticed an article in a local newspaper concerning the "smart house" home control system, which was described as a centralized security system. The smart house system is manufactured by Molex. VEC is an authorized distributor of electronic equipment manufactured by Molex, including the smart house system. Mr. Adlaka attended a demonstration of the smart house system given by Bob Anson, a VEC employee, at a model home in Howland, Ohio, and was impressed. Mr. Adlaka testified in deposition he was told that the system was designed for growth and adaptation over a period of years, and that it would take him into the new millennium.
 {¶ 3} He testified that he gave architectural drawings of the home he was building to VEC, and that VEC used "stickies" to show him where the various components of the system should be placed. Appellants never produced a copy of these blueprints, with or without the stickies. Santon Electric Co., Inc. ("Santon") was the electrical contractor on appellants' home. Santon purchased the smart house system from VEC and installed it. Mr. Adlaka testified that a VEC engineer supervised the installation of the system by Santon, but that the only document he ever received from VEC was a "quote," which merely listed certain components of the security system without mentioning any prices. Mr. Adlaka conceded in deposition that this was not a quote; it was simply a list of equipment. *Page 3 
 {¶ 4} Mr. Adlaka testified he paid Santon $33,000 for its electrical contracting work, including approximately $30,000 for its work in installing the smart house system in or about February, 1995. He testified that the only amount they ever paid VEC was $1.00 in cash, but he had no receipt or any document to evidence this payment. Appellants made no payment to Molex.
 {¶ 5} Mr. Adlaka testified he had problems with the system following its installation. He contacted Molex after the system was installed, who referred him to its representative Hagen Hi-Tech. Hagen came to appellants' home on many occasions and corrected many of the problems. Mr. Adlaka testified that although the system has been in use in their home for seven years, he considers it to be inoperable. Nonetheless, he testified he and his wife continue to set the security system every day by putting it on "away" mode and "night" mode, as appropriate.
 {¶ 6} There are no written contracts or warranties between VEC or Molex and the Adlakas. VEC introduced the affidavit of Rachel Barber, its accounts receivable manager, who stated that VEC's records showed that appellants were never its customers and that VEC never received any money from appellants, including the $1.00 referred to by appellants.
 {¶ 7} In January, 2000, appellants filed a complaint alleging breach of contract and fraud against VEC and Molex. They voluntarily dismissed that action, then re-filed the instant matter. They filed an amended complaint adding Santon as a defendant, but later dismissed it as a party.[1] Both VEC and Molex filed answers denying the material *Page 4 
allegations of the complaint. Subsequently, appellees filed motions for summary judgment, which the Adlakas opposed. By judgment entry, filed June 8, 2007, the trial court granted both VEC and Molex' motions. The trial court found that no contract existed between appellants and VEC or Molex. The court also found that appellants' fraud claim failed because no statements were made by either appellee to induce appellants to purchase the system. The Adlakas timely noticed this appeal, assigning one error:
 {¶ 8} "The court erred in granting summary judgment in favor of defendants [.]"
 {¶ 9} The Adlakas maintain they raised genuine issues of material fact on their contract and fraud claims against both VEC and Molex, rendering the grant of summary judgment improper. We do not agree. This court has held:
 {¶ 10} "`Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' Holik v. Richards, 11th Dist. No. 2005-A-0006, 2006-Ohio-2644, at ¶ 12, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 293, * * *. `In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party.' Id. citing Civ.R. 56(C). Further, the standard in which we review the granting of a motion for summary judgment is de novo. Id. citing Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105, * * *.
 {¶ 11} "Accordingly, `[s]ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of material fact. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a *Page 5 
genuine issue of fact on a material element of the nonmoving party's claim.' Brunstetter v. Keating, 11th Dist. No. 2002-T-0057, 2003-Ohio-3270, ¶ 12, citing Dresher at 292. `Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.' Id., citing Dresher at 293.
 {¶ 12} "* * *
 {¶ 13} "* * * The jurisprudence of summary judgment standards has placed burdens on both the moving and nonmoving party. In Dresher v. Burt, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, *Page 6 
summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Misteff v. Wheeler (1988), 38 Ohio St.3d 112, * * *.
 {¶ 14} "* * *
 {¶ 15} "The Supreme Court in Dresher went on to hold that whenneither the moving nor nonmoving party provides evidentiary materials demonstrating there are no material facts in dispute, the moving party is not entitled to judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, `and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.' Id. at 276. (Emphasis added.)"Welch v. Ziccarelli, 11th Dist. No. 2006-L-229, 2007-Ohio-4374, at ¶ 36-37, 40-42. (Parallel citations omitted.)
 {¶ 16} We deal with the issue of fraud, first. Initially, we note that appellants concede in their appellate brief, "Obviously, Adlaka is not alleging that lies were told to him." Since a misrepresentation or lie is essential for a fraud claim, appellants concede there is no evidence of such claim. The Adlakas maintain that VEC told them the smart house system would take them into the new millennium, and they believed this to be an assurance the system would last their lifetimes. VEC responds that the reference to the next millennium was mere puffery; and that there is no evidence in the record indicating VEC did not believe the system was effective, functional, and capable of carrying out its assigned functions. Molex asserts it made no representations to the Adlakas at all.
 {¶ 17} "In order to set forth a claim for fraud, a party must set forth sufficient facts demonstrating (1) a representation of fact, (2) which is material to the transaction at *Page 7 
hand, (3) made falsely, with knowledge of its falsity, or with utter disregard and recklessness, as to whether it is true or false, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation, (6) and a resulting injury proximately caused by the reliance." Natl. City Bank v. Slink Taylor, LLC, 11th Dist. No. 2002-P-0045, 2003-Ohio-6693, at ¶ 23.
 {¶ 18} Regarding VEC, the Adlakas presented no evidence competent under Civ.R. 56 of the third element necessary to establish fraud — i.e., that any representation made to them by VEC concerning the smart house system was made falsely, or with utter disregard for its truth. They presented no evidence whatsoever that Molex made any representation to them concerning the system. We therefore hold that the trial court correctly granted summary judgment to VEC and Molex on appellants' fraud claims.
 {¶ 19} Similarly, the trial court correctly granted summary judgment to VEC and Molex on appellants' breach-of-contract claims against them because there is no evidence of any contract between either appellee and appellants. The Supreme Court of Ohio has held:
 {¶ 20} "`A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' Perlmuter PrintingCo. v. Strome, Inc. (N.D. Ohio 1976), 436 F. Supp. 409, 414. A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. Episcopal Retirement Homes, Inc. v. OhioDept. of Indus. Relations (1991), *Page 8 61 Ohio St. 3d 366, 369 * * *." Kostelnik v. Helper, 96 Ohio St.3d 1,2002-Ohio-2985, at ¶ 16. (Parallel citation omitted.)
 {¶ 21} Consideration requires mutuality of obligation. It is a bargained-for legal benefit and/or detriment. Id. "Bargained-for" means a promise sought by the promissor in exchange for his promise or given by the promissee in exchange for the promise. Carlisle v. TRExcavating, Inc. (1997), 123 Ohio App.3d 277, 283.
 {¶ 22} Appellants point to no evidence in the record showing a contract between themselves and Molex. As the trial court indicates in its judgment entry, the allegation of breach is set forth at paragraph eight of the amended complaint, stating that, "the failure of the Defendants to install and service the [smart house] system so that it performs fully functional is a breach of their contract with Plaintiffs." However, there is no evidence Molex, the systems' manufacturer, ever had any contact with the Adlakas prior to or during the sale or installation of the system. There is no evidence of any exchange of promises between Molex and the Adlakas, at any point. Molex simply tried to remediate problems with the system alleged by the Adlakas, well after its purchase and installation.
 {¶ 23} Further, our review of the record reveals there is no evidence concerning appellants' breach-of-contract claim against VEC. The trial court found there was no contract between VEC and the Adlakas for three reasons: failure of consideration; absence of a written memorial; and, that the allegation the defendants failed to "install and service" the system did not apply to VEC, since Santon did the installation. It is undisputed that there was no written contract between these parties. As Mr. Adlaka testified, this security system, like most such systems, is complex in that, among other *Page 9 
things, it required planning to determine the components of the system, their location on the property, and the method of interior and/or exterior installation. The provider typically makes available a wide array of options, such as in this case motion sensors, camera and television tie-ins, infrared communication devices, lighting controls, and surge protection, which it agrees to install and/or maintain for a certain period and at a certain installation and monthly prices. Such contracts would necessarily also include such items as warranties and guarantees. These are some of the essential terms of such contracts. For these reasons, among others, such contracts are almost universally in writing, and it is difficult to conceive how such a contract could be entered into unless it was in writing.
 {¶ 24} Appellants concede in their appellate brief, "In this case ambiguities exist in the oral contract regarding the responsibilities of Molex and Valley." Because the parties never reached a verbal meeting of the minds concerning the essential terms of a contract for the planning, installation, and maintenance of a security system, there is no evidence the parties entered an oral contract. Episcopal Retirement Homes, supra.
 {¶ 25} Further, accepting Mr. Adlaka's testimony as true for summary judgment purposes, appellants promised to buy the smart house system from Santon, not VEC. There is no evidence in the record that Santon is an agent of VEC. Without evidence of agency, any alleged breach on the part of Santon would not bind VEC.
 {¶ 26} In order to enforce a contract against a principal which an alleged agent undertook to make for the principal, it must appear that the agent in assuming to so act had the power to make the contract for the principal. Miller v. The Wick Bldg. Co., (1950), 154 Ohio St. 93, at paragraph one of the syllabus. In this case there is no *Page 10 
evidence that Santon undertook to make a contract for VEC. Nor is there any evidence that Santon had the power to make a contract which would bind VEC.
 {¶ 27} Further, an agency relationship is a consensual, fiduciary relationship between two persons where the agent has the power to bind the principal by his or her actions, and the principal has the right to control the actions of the agent. Evans v. The Ohio State Univ. (1996),112 Ohio App.3d 724, 744.
 {¶ 28} An agency relationship exists when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks.Mermer v. Medical Correspondence Services, 115 Ohio App.3d 717, 721, citing Hanson v. Kynast (1986, 24 Ohio St.3d. 171. The important element in determining the existence of an agency relationship is the existence of control over the conduct and activities of the alleged agent.Haluka v. Baker (1941), 66 Ohio App. 308. Courts generally examine various factors in determining whether the required amount of control exists. One such factor is whether the alleged agent is performing in the course of the principal's business rather than in some ancillary capacity. Hanson, supra. Because there is no evidence in the record concerning the level of control, if any, exercised by VEC over Santon's activities, there is no evidence that Santon was acting as VEC's agent.
 {¶ 29} Next, there is no evidence of consideration. We agree with the trial court that the $1 allegedly given by Mr. Adlaka to VEC was insufficient to constitute consideration for a security system that, appellants concede, would have been worth $30,000. Even if we were to accept as true appellants' contention that they paid $1.00 in cash to VEC for its supervisory services, as a matter of law, one dollar does not *Page 11 
represent a benefit to VEC or a detriment to appellants. As indicated supra, appellants paid its electrical contractor Santon for the security system; it did not make any payment to VEC or Molex for it. Further, there is no evidence VEC and appellants reached any agreement concerning the cost of installation or the monthly fee for the system.
 {¶ 30} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas is affirmed.
DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur.
[1] Cincinnati Insurance Company, VEC's insurer, entered the action as a third-party plaintiff. Its motion for summary judgment was also granted by the trial court's judgment entry. Cincinnati is not a party to this appeal. *Page 1