[Cite as *Spoerke v. Abruzzo*, 2014-Ohio-1362.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| MARK W. SPOERKE, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | CASE NO. 2013-L-093 |
| CHARLIE ABRUZZO, PRESIDENT, RED LINE MARINE LIQUIDATORS, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 12 CV 001049.

Judgment: Affirmed.

*Tammy Georgian,* Tammy G. Gibson Co., LPA, 38118 Second Street, Willoughby, OH 44094 (For Plaintiff-Appellant).

*Scott D. Simpkins and Stewart D. Roll,* Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., 55 Public Square, Suite 1950, Cleveland, OH 44113 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Mark W. Spoerke, appeals the summary judgment of the Lake County Court of Common Pleas in favor of appellee, Red Line Marine Liquidators, Inc., on Spoerke's claim for breach of contract. At issue is whether any genuine issues of material fact exist concerning whether the parties had a meeting of the minds. For the reasons that follow, we affirm.

{¶2} On April 26, 2012, Spoerke, acting pro se, filed a complaint against Red Line's president, Charlie Abruzzo, alleging that Mr. Abruzzo breached a contract to sell a boat to Spoerke. The complaint was later amended to substitute Red Line for Mr. Abruzzo as the defendant. Red Line filed an answer, denying the material allegations of the amended complaint.

{¶3} Subsequently, Red Line filed a motion for summary judgment, denying the existence of a contract due to the lack of a meeting of the minds regarding terms of the sale. Specifically, Red Line argued that Spoerke did not accept its offer, but rather submitted a counteroffer that was not accepted by Red Line. Spoerke filed his brief in opposition, and Red Line filed a reply brief. Spoerke then filed a supplemental brief in opposition. Thereafter, counsel filed a notice of appearance on behalf of Spoerke and a notice of supplementation with an attached affidavit from Spoerke. Red Line filed a reply to Spoerke's notice of supplementation. Thereafter, Spoerke filed a second supplemental brief in opposition.

{¶4} The statement of facts that follows is derived from the parties' evidentiary materials submitted on summary judgment. Red Line, which is based in Oceanport, New Jersey, sells pre-owned boats to the public at wholesale prices. It sells a wide variety of mid-size boats in the 35-foot to 50-foot range. Spoerke is a resident of Mentor, Ohio.

{¶5} Spoerke had been looking at various yacht broker websites for several years for a used Albemarle boat because he likes that type of boat, but felt a new Albemarle would be too expensive.

2

{¶6} On Sunday, April 8, 2012, Spoerke learned that Red Line had a 2006 41-foot Albemarle Express sport fishing boat for sale. As a result, he contacted Red Line via e-mail expressing an interest in that boat. On Monday, April 9, 2012, he made a telephone call to Red Line following up on his e-mail.

{¶7} Meanwhile, on Tuesday, April 10, 2012, Red Line signed a purchase agreement for the subject boat with another buyer, Jonathan Danforth, which was conditioned on Mr. Danforth receiving credit approval. That day, Mr. Danforth was denied credit approval, invalidating his contract, and the boat again became available for sale.

{¶8} On Wednesday, April 11, 2012, Red Line's president Mr. Abruzzo called Spoerke and told him there had been a sale on the boat, but that it had fallen through and the boat was again available for sale. They discussed the terms of the sale of the boat to Spoerke. As part of the sale, Spoerke would be trading in his boat, which was a 41-foot 2001 Formula PC.

{¶9} Later on April 11, 2012, Red Line sent an e-mail to Spoerke with a proposed purchase contract signed by Mr. Abruzzo on behalf of Red Line containing the terms the parties discussed, a list of boat surveyors, and directions to Red Line's marina in New Jersey. Mr. Abruzzo asked Spoerke to sign the proposed purchase contract and to e-mail the signed contact to Red Line. The proposed contract reflected the purchase price of the boat as $319,000, a deposit of $15,000, and a trade-in allowance for Spoerke's Formula PC boat in the amount of $88,000, leaving a balance due of $216,000. The sale was to close within two weeks, with the survey costs and costs of the sea trial to be borne by Spoerke.

{¶10} Later that day, Spoerke e-mailed Red Line stating that, since the purchase numbers were not final, did Red Line want him to sign and return the contract and wire the deposit or should he finalize the details of financing with his lender. Spoerke said he wanted to use his own lender because his bank was familiar with his finances.

{¶11} Mr. Abruzzo responded that Red Line needed the contract signed and the deposit paid. In response, Spoerke wired the $15,000 deposit to Red Line and sent back a signed purchase agreement for the boat. However, Spoerke wrote and initialed on the contract form next to the dollar amounts the phrase, "*Will adjust per the terms of the financing.*" (Emphasis added.)

{¶12} Still later on April 11, 2012, Spoerke sent an e-mail to Mr. Abruzzo, stating:

{¶13} I am set on the financing, but we need to provide the final details to the lender. How much can we gross up the trade and purchase price on the Albemarle. Can we go to $140,000 on the Formula, and $371,000 on the Albemarle, or $150,000 on the Formula and $381,000 on the Albemarle. I would like to gross it up as much as possible and save my cash but didn't know if this would have any negative impact on you. Once I have that revised purchase agreement, we should be set to proceed and close pending the survey, etc.

{¶14} Spoerke testified in his deposition that the reason he was attempting to increase the value of both the Albemarle and his trade-in boat was because he thought he would thereby obtain a tax benefit for himself.

{¶15} Mr. Abruzzo responded with an e-mail stating, "make the numbers how ever you need em and I will sign it * * *. I wouldn't go past 150k on the PC * * *.

{¶16} Two days later, on Friday, April 13, 2012, Spoerke sent an e-mail to Red Line, stating he had loan approval subject to the survey next Tuesday and the sea trial on April 21, 2012. He said his lender will need a signed copy of the purchase agreement to finalize the loan. Spoerke prepared and attached to his e-mail what he referred to as "a revised purchase agreement," reflecting a purchase price of $381,000; $150,000 for Spoerke's Formula PC trade-in; and a $15,000 deposit, with a balance due of $231,000. In this e-mail, Spoerke asked Mr. Abruzzo to sign the revised contract and to forward it to his lender.

{¶17} However, Mr. Abruzzo did not sign and return the revised purchase agreement to Spoerke's lender. Instead, on the following Wednesday, April 18, 2012, Red Line proposed selling a similar, but smaller, boat to Spoerke for about $250,000. The boat had no tower or outriggers to remove, which Spoerke had said he would have to do on the 41-foot Albemarle. Spoerke responded by e-mail saying that he wanted to buy the 41-foot Albemarle. He said his lender would be contacting Red Line.

{¶18} However, Red Line did not proceed with the sale of the Albemarle to Spoerke. Mr. Abruzzo stated in his affidavit that Red Line rejected Spoerke's counteroffer because it was concerned that the inflated purchase price and trade-in allowance could be construed as bank fraud in connection with Spoerke's efforts to obtain financing. On April 23, 2012, Mr. Abruzzo e-mailed Spoerke, telling him that Spoerke was asking Red Line to participate in bank fraud, which it would not do, and returned Spoerke's $15,000 deposit.

5

{¶19} Thereafter, Red Line again made the boat available for sale. On April 24, 2012, Red Line sold the Albemarle to Jonathon Danforth, the same person who had unsuccessfully attempted to buy it on April 10, 2012, for $319,000, after Mr. Danforth obtained financing. Two days later, on April 26, 2012, Spoerke, pro se, filed this action.

{¶20} The trial court granted summary judgment in favor of Red Line, finding that, as a matter of law, there was no meeting of the minds and no enforceable contract and thus no breach of contract. The court found that, based on the parties' correspondence, they did not have a common intention regarding some of the essential terms of the contract, i.e., the price of Albemarle and the value of Spoerke's trade-in. The court found that, while the sales agreement Red Line e-mailed to Spoerke on April 11, 2013 could be construed as an offer to sell, Spoerke did not accept it. Rather, he added a provision indicating the terms would be adjusted for financing purposes. Later that day, Spoerke sought to raise the sales price of the Albemarle and the trade-in value of his boat. The court found that, while Red Line considered Spoerke's offer, it did not accept it. Spoerke admitted that Red Line never signed the revised purchase contract he sent to Red Line on April 11, 2012. Red Line's president, Mr. Abruzzo, stated in his affidavit that he did not accept the revised purchase contract or send the revised terms of the contract to Spoerke's lender because he, Mr. Abruzzo, was afraid it could be construed as bank fraud. The court found that, without Red Line's acceptance of Spoerke's counteroffer, there was no contract.

{¶21} Spoerke appeals the trial court's judgment, asserting the following for his sole assignment of error:

{¶22} "The trial court erred in granting Appellee's motion for summary judgment based upon its opinion that the totality of the correspondence indicated that the parties did not have a distinct and common intention with regard to some of the essential terms of the sale, finding there was no meeting of the minds and no enforceable contract."

{¶23} This court has held that summary judgment is proper when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Frano v. Red Robin International, Inc.*, 181 Ohio App.3d 13, 2009-Ohio-685, ¶12 (11th Dist.), citing *Leibreich v. A.J. Refrigeration, Inc.*, 67 Ohio St.3d 266, 268 (1993).

{¶24} The party seeking summary judgment on the ground that the nonmoving party cannot prove his case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996).

{¶25} The moving party must point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support his claim. *Dresher*, *supra*, at 293.

{¶26} If this initial burden is not met, the motion for summary judgment must be denied. *Id*. However, if the moving party has satisfied his initial burden, the nonmoving party then has a reciprocal burden, as outlined in Civ.R. 56(E), to set forth specific facts

showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against him. *Id.*

{¶27} Since a trial court's decision ruling on a motion for summary judgment involves only questions of law, we conduct a de novo review of the trial court's judgment. *DiSanto v. Safeco Ins. of Am.*, 168 Ohio App.3d 649, 2006-Ohio-4940, ¶41 (11th Dist.). Further, the existence of a contract is a question of law. *Zelina v. Hillyer*, 165 Ohio App.3d 255, 2005-Ohio-5803, ¶12 (9th Dist.). This court reviews questions of law regarding the existence of contracts de novo. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1996).

{¶28} In Ohio, the Statute of Frauds provides that "a contract for the sale of goods for the price of five hundred dollars or more is not enforceable * * * unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent * * *." R.C. 1302.04.

{¶29} The essential elements of a contract are an offer, acceptance, contractual capacity, consideration (the bargained-for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration. *Adlaka v. Valley Elec. Consol, Inc.*, 11th Dist Trumbull No. 2007-T-0071, 2008-Ohio-1690, ¶20. For a contract to be enforceable, the parties must have a meeting of the minds as to all essential terms. *Id.*; *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶16. Unless the parties agree as to all essential terms, no contract exists. *Id.* "The existence of an enforceable contract is a prerequisite to a claim for breach of contract." *Ireton v. JTD Realty Invests., L.L.C.*, 12th Dist. Clermont No. CA2010-04-023, 2011-Ohio-670, ¶38.

{¶30} To constitute a valid contract, there must be an offer on the one side and an acceptance on the other resulting in a meeting of the minds of the parties. *Noroski v. Fallet*, 2 Ohio St.3d 77, 79 (1982). Generally, the submission of a purchase order is viewed as being an offer, which may then be accepted or rejected by the offeree. *American Bronze Corp. v Streamway Products*, 8 Ohio App.3d 223 (8th Dist.1982), paragraph one of the syllabus. Further, "[a] reply to an offer [by the offeree] which purports to accept but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counteroffer." *Foster v. Ohio State University*, 41 Ohio App.3d 86, 88 (10th Dist. 1987), citing 1 Restatement of the Law 2d, Contracts (1981) 145, Section 59. Moreover, the transmission of various amendments to a proposed purchase agreement constitute counteroffers used for negotiating purposes before finalizing the intended agreement. *Hairston v. Goodman*, 8th Dist. Cuyahoga No. 58193, 1991 Ohio App. LEXIS 1176, *9 (Mar. 21, 1991). The Eighth District in *Hairston* further stated:

{¶31} When plaintiff inserted the forty-eight hour "point of sale" review provision, something remained to be done to establish the contract. In addition, plaintiff's response did not correspond to the terms of the Goodmans' counteroffer. Plaintiff had tendered either a conditional acceptance or a counteroffer which defendants never initialed or accepted in accord with the Statute of Frauds.

{¶32} The purchase agreement did not show a concluded contract since the evidence establishes no meeting of the minds. Plaintiff presented no evidence to refute defendants' assertion they did not

assent to the inserted alteration. At best, plaintiff tendered a conditional acceptance which destroyed the original offer. Otherwise, the change plaintiff made in the purchase agreement could be considered a counteroffer on which there was no meeting of the minds which is essential to formation of a contract. *Id.* at *11-*12.

{¶33} Applying the foregoing principles to this case, the proposed purchase contract Mr. Abruzzo sent to Spoerke can only be construed as an offer since it sought Spoerke's acceptance. However, Spoerke did not accept Red Line's offer as submitted. Rather, he accepted the offer conditioned on Red Line's acceptance of the additional provision Spoerke wrote on the contract that the terms would be adjusted pursuant to the terms of financing. This condition changed the acceptance into a counteroffer, which Red Line was required to accept in order to form a valid contract. However, Red Line did not accept the counteroffer. In fact, Spoerke admits that Red Line did not sign off on the counteroffer. As Red Line did not accept Spoerke's counteroffer, no contract existed between the parties, and Red Line was free to accept Mr. Danforth's offer to purchase the Albemarle.

{¶34} Contrary to Spoerke's argument, the parties' ongoing discussions and e-mail correspondence was nothing more than negotiation prior to finalizing the parties' contract. *Hairston, supra.* Spoerke concedes that the contract price, i.e., the price of the Albemarle, was a key term of the contract. In Red Line's offer, the price was shown as $319,000. However, because Spoerke also wanted to obtain a tax benefit, he revised the offer to show the contract price as $381,000. Spoerke's suggestion that the

only material term was the net price to be paid to Red Line is belied by the fact that Red Line refused to sign Spoerke's counteroffer.  Spoerke conveniently ignores the fact that, *Red Line never signed Spoerke's counteroffer*, and, instead, Mr. Abruzzo advised him by e-mail that his maneuverings could be construed as bank fraud in which Red Line would not participate and returned Spoerke's deposit.

{¶35}  We therefore hold that the trial court did not err in finding that, as a matter of law, the parties did not reach a meeting of the minds as to the price of the Albemarle or as to the value of Spoerke's trade-in; that no contract existed between the parties; and that Red Line was entitled to summary judgment on Spoerke's claim for breach of contract.

{¶36}  For the reasons stated in the opinion of this court, appellant's assignment of error is overruled.  It is the order and judgment of this court that the judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

11