[Cite as *Iqbal v. Wells Fargo Bank, N.A.*, 2014-Ohio-3156.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Humayun Iqbal, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 14AP-31 |
| v. | : | (C.P.C. No. 12CV-3269) |
| Wells Fargo Bank, N.A., | : | (REGULAR CALENDAR) |
| dba American Servicing Company, | | |
| | : | |
| Defendant-Appellee. | | |
| | : | |

D E C I S I O N

Rendered on July 17, 2014

*Steven E. Hillman,* for appellant.

*Thompson Hine LLP, Scott A. King* and *Terrance A. Mebane,* for appellee.

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Plaintiff-appellant, Humayun Iqbal, appeals from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 56 motion for summary judgment filed by defendant-appellee, Wells Fargo Bank, N.A. Because (1) the trial court did not abuse its discretion in denying Iqbal's motion for default judgment, and (2) the trial court properly granted Wells Fargo's motion for summary judgment, we affirm.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On March 13, 2012, Iqbal filed a complaint against "American Servicing Company Loss Draft" alleging a claim for breach of contract. Iqbal served the complaint to the following address: PO Box 4455, Springfield, Ohio 45501. The body of the complaint

stated that the defendant was "America's Servicing Company (ASC) * * * a division of Wells Fargo Home Mortgage that services loans for other investors under the America's Servicing Company name." (Complaint, ¶ 1.) Iqbal asserted in the complaint that ASC sent a letter to Iqbal on March 29, 2011, "offering to distribute funds realized from the Plaintiff's insurance company due to fire damage at 1496 Magoffin Ave., Obetz, Ohio." (Complaint, ¶ 4.) Iqbal asserted that the "offer was accepted by the Plaintiff," and that ASC breached the contract when it received the insurance proceeds but refused to disburse those funds to Iqbal. (Complaint, ¶ 5.) Iqbal attached the March 29, 2011 letter to the complaint.

{¶ 3}  As indicated in the complaint, Wells Fargo serviced Iqbal's note and mortgage. Iqbal executed a promissory note on May 9, 2006 in favor of First Franklin, a division of National City Bank of Indiana. The note was secured by a mortgage on the real property located at 1496 Magoffin Ave., Obetz, Ohio. First Franklin subsequently indorsed the note to First Franklin Financial Corporation. First Franklin Financial Corporation subsequently endorsed the note to Deutsche Bank National Trust Company, as Trustee for First Franklin Mortgage Loan Trust 2006-FF11.

{¶ 4}  On August 29, 2010, a fire occurred at the residence. At the time of the fire, Iqbal had a homeowner's insurance policy through the Travelers Property Casualty Insurance Company ("Travelers"). Iqbal filed a claim with Travelers and, in June 2011, Travelers denied Iqbal's claim. On June 9, 2011, Travelers requested a payoff statement and proof of loss from Wells Fargo. In order for Wells Fargo to "file a claim as mortgagee, [Wells Fargo] need[ed] * * * a written notification of the borrowers claim being denied." (Kemp Depo., 54.) Accordingly, Wells Fargo requested a "formal claim denial letter from Travelers," and after Wells Fargo received the denial letter, it filed a claim with Travelers as the mortgagee of the property. (Kemp Depo., 52.)

{¶ 5}  On June 8, 2011, a company called Restoration Resources provided Iqbal with a repair estimate, indicating that it would cost $157,000 to repair the house. In July 2011, Iqbal stopped making payments on the note, and the note went into default.

{¶ 6}  On October 14, 2011, the Village of Obetz issued a Notice of Violation to Iqbal. The notice advised Iqbal that the house located at 1496 Magoffin Ave. was in immanent danger of collapse and had "deteriorated to a state that exceeds the restrictions

for rebuilding." (Kemp Depo., exhibit No. 31.) The notice informed Iqbal that he had 7 days to secure the structure, and 30 days to completely raze the structure, remove the foundation and driveway, and clean, grade, and seed the surface. Although the Notice of Violation contained instructions on how to appeal the notice, Iqbal did not appeal the Notice of Violation.

{¶ 7}   On November 29, 2011, Wells Fargo received a check for $156,086.33 from Travelers. The $156,086.33 figure represented the unpaid balance due on the mortgage on the date of loss. By November 2011, the outstanding balance on the loan was $157,347.21.

{¶ 8}   Because Iqbal did not demolish the property as the Notice of Violation instructed, Obetz initiated a nuisance action against Iqbal on July 9, 2012. At a January 10, 2013 hearing on the nuisance action, Leonard Lewis, the chief building officer for the Village of Obetz, testified that it "wouldn't be cost-effective at all" to try to repair the property. (Jan. 10, 2013, Tr. 8.) Lewis stated that the property had been beyond repair since Obetz issued the Notice of Violation on October 14, 2011.

{¶ 9}   On May 9, 2012 Wells Fargo Bank, N.A., fka Wells Fargo Home Mortgage, Inc. and dba ASC, (collectively "Wells Fargo") filed a motion for extension of time to answer or otherwise plead. Wells Fargo noted that Iqbal had served the summons on an entity called "American Servicing Company Loss Draft," not ASC, and that Iqbal mailed the summons to PO Box 4455 in Springfield, Ohio, an address which was not a service address for either Wells Fargo Bank, N.A., Wells Fargo Home Mortgage, Inc., or ASC.

{¶ 10} Plaintiff filed a Civ.R. 55 motion for default judgment on May 11, 2012. Wells Fargo filed a memorandum in opposition to the motion for default judgment on May 18, 2012, asserting that the court should deny the motion as Iqbal had failed to perfect service on Wells Fargo. Wells Fargo noted that Assurant Group, a company with which Wells Fargo occasionally did business, maintained PO Box 4455 in Springfield, Ohio. On July 13, 2012, the court issued a decision and entry granting Wells Fargo's motion for an extension of time and denying Iqbal's motion for a default judgment.

{¶ 11} On October 1, 2012, Iqbal filed an amended complaint, identifying Wells Fargo as the defendant. Iqbal served the complaint on Wells Fargo's statutory agent. Iqbal continued to assert in the amended complaint that the March 29, 2011 letter from ASC

was an offer, which Iqbal had accepted, and which Wells Fargo breached by refusing to distribute the insurance proceeds it had received from Travelers.

{¶ 12} On May 10, 2013, Wells Fargo filed a Civ.R. 56 motion for summary judgment. Wells Fargo asserted in the motion that the mortgage was the contract which controlled the dispute, not the March 29, 2011 letter. Wells Fargo noted that under Section 5 of the mortgage, Wells Fargo only had to release the insurance proceeds to Iqbal if it was economically feasible to repair the house. Citing the October 14, 2011 Notice of Violation, Wells Fargo argued that it was not economically feasible to repair the house on November 29, 2011, when Wells Fargo received the insurance proceeds. Wells Fargo further asserted that the March 29, 2011 letter was not a contract, and thus did not support Iqbal's claim for breach of contract. Wells Fargo's vice president of loan documentation, Amanda Weatherly, averred that the March 29, 2011 letter simply "advised Iqbal of [Wells Fargo's] standard procedures regarding the processing of insurance claim proceeds in excess of $15,000.00 for loans that are not in default." (Weatherly Affidavit, ¶ 5.)

{¶ 13} Iqbal filed a memorandum contra Wells Fargo's motion for summary judgment on May 30, 2013. Iqbal asserted that, at the time Wells Fargo received the insurance proceeds, he had fulfilled "all of the provisions in" the March 29, 2011 letter, "and the home could still be repaired for the amount received by the defendant from Travelers." (Memo Contra, 3-4.) Although Iqbal filed an affidavit stating that the funds Wells Fargo received from Travelers would have been adequate to repair the house, Iqbal presented no evidence to establish that the property could have been repaired for $156,086.33 on November 29, 2011.

{¶ 14} On December 4, 2013, the trial court issued a decision and entry granting Wells Fargo's motion for summary judgment. The court noted that plaintiff sued Wells Fargo, his mortgage loan servicer, "attempting to recover insurance proceeds so that he can repair the property." (Decision, 1.) The court observed that "Obetz already declared the property is beyond repair, and the mortgage expressly states that Iqbal is not entitled to the proceeds if the repairs are not feasible." (Decision, 1.) The court further noted that Iqbal's own breach precluded him from recovering, and that his attempt to manufacture a

contract out of the March 29, 2011 letter, was barred by the statute of frauds and for lack of an offer and consideration.

## II. ASSIGNMENTS OF ERROR

{¶ 15} Iqbal appeals, assigning the following errors:

> [I] The trial court erred when it refused to grant the Appellant's Motion for Default filed in the underlying case on 5/11/12, Docket #22.
>
> [II] The Trial Court erred [when] it granted Appellee's Motion for Summary Judgment.

## III. FIRST ASSIGNMENT OF ERROR - DEFAULT JUDGMENT

{¶ 16} Iqbal's first assignment of error asserts the trial court erred in denying his May 11, 2012 motion for default judgment.

{¶ 17} "Under Civ.R. 55(A), when a party against whom judgment is sought fails to plead or otherwise defend, the opposing party may apply to the court for a default judgment." *Lopez v. Quezada,* 10th Dist. No. 13AP-389, 2014-Ohio-367, ¶ 11. "A default judgment is proper against an unresponsive defendant ' "as liability has been admitted or 'confessed' by the omission of statements refuting the plaintiff's claims." ' " *Id.* at ¶ 12, quoting *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.,* 28 Ohio St.3d 118, 121 (1986), quoting *Reese v. Proppe,* 3 Ohio App.3d 103, 105 (8th Dist.1981). We review a trial court's decision to grant or deny a motion for default judgment for abuse of discretion. *Id.,* citing *Bank of Am., N.A. v. Malone,* 10th Dist. No. 11AP-860, 2012-Ohio-3585, ¶ 18.

{¶ 18} A trial court lacks personal jurisdiction to enter a default judgment against a defendant where effective service of process has not been made upon the defendant and the defendant has not appeared in the case or otherwise waived service. *Fifth Third Bank v. Hatfield,* 10th Dist. No. 03AP-175, 2004-Ohio-755, ¶ 12. Absent proper service, the trial court lacks jurisdiction to enter a judgment, and if a judgment is nevertheless rendered, it is nullity and void ab initio. *Id.* When a party challenges whether service was proper or effective, the court is "guided by the premise that service is proper where the civil rules on service are followed, unless sufficient evidence exists to rebut this

principle." *Neiswinter v. Nationwide Mut. Fire Ins. Co.,* 9th Dist. No. 21691, 2004-Ohio-3943, ¶ 4, citing *Grant v. Ivy*, 69 Ohio App.2d 40 (10th Dist.1980).

{¶ 19} Civ.R. 4.2(F) provides that service of process on a corporation shall be made "by serving the agent authorized by appointment or by law to receive service of process; or by serving the corporation at any of its usual places of business by a method authorized under Civ.R. 4.1(A)(1); or by serving an officer or a managing or general agent of the corporation." Iqbal asserts that "American Servicing Company (Wells Fargo) has it[s] usual place of business in Springfield, Ohio and was served at its mailing address." (Appellant's brief, 12.) However, Iqbal cites to no evidence to support the contention that he served Wells Fargo at its usual place of business. Wells Fargo explained in its motion for extension of time that a separate company, Assurant Group, maintains PO Box 4455 in Springfield, Ohio. The March 29, 2011 letter from ASC, which Iqbal attached to his complaint, states that ASC's mailing address is PO Box 6105 in Springfield, Ohio.

{¶ 20} The record demonstrates that Iqbal failed to serve the original complaint on either Wells Fargo's statutory agent, an officer or agent of Wells Fargo, or at any of Wells Fargo's usual places of business. Iqbal thus had failed to perfect service on Wells Fargo at the time Iqbal filed the motion for default judgment. Moreover, two days before Iqbal filed the motion for default judgment, Wells Fargo, despite the lack of service, appeared in the action and requested an extension of time to file a responsive pleading. Accordingly, the trial court did not abuse its discretion in denying Iqbal's motion for default judgment.

{¶ 21} Based on the foregoing, Iqbal's first assignment of error is overruled.

## IV.  SECOND ASSIGNMENT OF ERROR – SUMMARY JUDGMENT

{¶ 22} Iqbal's second assignment of error asserts the trial court erred by granting Wells Fargo's motion for summary judgment. Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162 (4th Dist.1997).  "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Bank Corp.*, 122 Ohio App.3d 100, 103 (12th Dist.1997).  We must affirm the trial court's judgment if any of the grounds raised by the movant at the

trial court are found to support it, even if the trial court failed to consider those grounds. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41-42 (9th Dist.1995).

{¶ 23} Summary judgment is proper only when the party moving for summary judgment demonstrates that: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in that party's favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 24} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  A moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case.  *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims.  *Id.*  If the moving party meets this initial burden, then the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.  *Id.*

{¶ 25} Iqbal asserts that he was entitled to receive the insurance proceeds that Wells Fargo received from Travelers, pursuant to Section 5 of the mortgage. Section 5 of the mortgage provides, in relevant part, as follows:

> In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, *any insurance proceeds*, whether or not the underlying insurance was required by Lender, *shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.* During such repair and

> restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. * * * *If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument*, whether or not then due, with the excess, if any, paid to Borrower.

(Emphasis added.) (Kemp Depo., Defendant's exhibit No. 20.)

{¶ 26} Thus, pursuant to the mortgage, the insurance proceeds were only available for the repair or restoration of the home if such repairs were economically feasible. Wells Fargo received the insurance proceeds on November 29, 2011. On October 14, 2011, the Village of Obetz issued the Notice of Violation stating that the house at 1496 Magoffin Ave. was "in imamate [sic] danger of complete collapse due to damage from a fire" and that the home had "deteriorated to a state that exceeds the restrictions for rebuilding." (Kemp Depo., exhibit No. 31.) The Notice of Violation gave Iqbal 30 days from receipt of the notice to completely raze the structure, and Iqbal did not appeal the notice. Additionally, the chief building officer for the Village of Obetz, testified that as of October 2011, the property was beyond repair. Thus, when Wells Fargo received the insurance proceeds, it was not feasible to repair the house.

{¶ 27} Moreover, in June 2011, Iqbal's own contractor estimated that the cost to repair the home was $157,000, a figure which exceeded the $156,086.33 Wells Fargo ultimately received from Travelers in November 2011. Iqbal also put forward no evidence to demonstrate what the cost would have been to repair the house in November 2011.

{¶ 28} In the complaint, Iqbal asserted a cause of action for breach of contract premised on the March 29, 2011 letter from ASC to Iqbal. Iqbal asserts that, had Wells Fargo "kept the bargain laid out in [the March 29, 2011 letter], the Appellant would have a home and the Appellee would be getting regular mortgage payments." (Appellant's brief, 18.) The March 29, 2011 letter, however, was not a contract.

{¶ 29} The essential elements of a contract are an offer, acceptance, contractual capacity, consideration (the bargained-for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration. *Adlaka v.*

*Valley Elec. Consol., Inc.,* 11th Dist. No. 2007-T-0071, 2008-Ohio-1690, ¶ 20. To constitute a valid contract, there must be an offer on the one side and an acceptance on the other resulting in a meeting of the minds of the parties. *Noroski v. Fallet,* 2 Ohio St.3d 77, 79 (1982). An offer is a " ' "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." ' " *Grothaus v. Warner,* 10th Dist. No. 08AP-115, 2008-Ohio-5563, ¶ 16, quoting *Leaseway Distrib. Ctrs., Inc. v. Dept. of Adm. Servs.,* 49 Ohio App.3d 99, 105 (10th Dist.1988), quoting Restatement of the Law 2d, Contracts, Section 24, 71 (1981). "The existence of an enforceable contract is a prerequisite to a claim for breach of contract." *Ireton v. JTD Realty Invests., L.L.C.,* 12th Dist. No. CA2010-04-023, 2011-Ohio-670, ¶ 38.

{¶ 30} The March 29, 2011 letter states that ASC received Iqbal's "inquiry regarding insurance claim check ('loss draft') procedures for your mortgage loan." (Complaint, exhibit A.) The letter states that for property damage in excess of $15,000 "any release of funds will be subject to our review of all relevant information and protection of our rights under the applicable loan documents." (Complaint, exhibit A.) The letter then lists the documents ASC would need to review prior to releasing any funds. The letter concludes by stating that "[u]pon receipt of these documents, funds are released in one third intervals." (Complaint, exhibit A.)

{¶ 31} The March 29, 2011 letter was not an offer. The letter was an informational response to Iqbal's inquiry regarding ASC's claim procedures. The letter does not evidence any willingness to bargain, it simply states ASC's general procedures regarding the release of insurance funds when property damage exceeding $15,000 has occurred. *Compare Wee Care Child Ctr., Inc. v. Ohio Dept. of Job & Family Servs.,* 10th Dist. No. 13AP-1004, 2014-Ohio-2913, ¶ 39 (noting that a letter, sent from the Ohio Department of Job and Family Services to a day care explaining the requirements for the day care to renew its license, did "not contain an offer; it manifests no willingness to bargain, but, rather, is informational in nature and sets forth statutory requirements to renew a day care license"). Accordingly, the March 29, 2011 letter was not a contract which Wells Fargo could have breached.

{¶ 32} Lastly, Iqbal states in his brief that Wells Fargo "cannot rely on hearsay as to the viability of the repair of the Appellant's home when the Appellant states that he will repair it and there is no one to dispute by direct evidence his intent or ability to repair the home." (Appellant's brief, 21.) In his statement of facts, Iqbal asserts that the October 14, 2011 "letter from Obetz is hearsay." (Appellant's brief, 9.) Absent an exception, hearsay may not be considered in a motion for summary judgment. *Ohio Receivables, L.L.C. v. Williams*, 2d Dist. No. 25427, 2013-Ohio-960, ¶ 10.

{¶ 33} " 'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Evid.R. 803(8), however, provides that "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report" are not statements which must be excluded by the hearsay rule. The Notice of Violation from the Village of Obetz is a public record which contains matters observed pursuant to a duty imposed by law. Accordingly, the Notice of Violation was not subject to exclusion under the hearsay rule.

{¶ 34} Based on the foregoing, we conclude that the trial court properly granted Wells Fargo's motion for summary judgment. Iqbal's second assignment of error is overruled.

## V. DISPOSITION

{¶ 35} Having overruled Iqbal's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____