[Cite as *Espyville of Pennsylvania, L.L.C. v. Ron-Bon, Inc.*, 2016-Ohio-1304.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| ESPYVILLE OF PENNSYLVANIA, LLC, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2015-L-086** |
| RON-BON, INC., AN OHIO CORPORATION, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 14 CV 001402

Judgment: Affirmed.

*William T. Wuliger,* Wuliger, Fadel & Beyer, LLC, The Brownell Building, 1340 Sumner Court, Cleveland, OH  44115 (For Plaintiff-Appellant).

*Jane Timonere,* Timonere Law Offices, L.L.C., 4 Lawyers Row, Jefferson, OH  44047 (For Defendants-Appellees).

COLLEEN MARY O'TOOLE, J.

{¶1}    Espyville of Pennsylvania, LLC, appeals from the grant of summary judgment to Ron-Bon, Inc., Bonnie Blanford, and Shane Blanford on its amended complaint for breach of contract and declaratory judgment.  Finding no error, we affirm.

{¶2}    Ron-Bon is in the business of filling and selling propane tanks.  It is owned by Bonnie Blanford and her son, Shane Blanford.  In 2014, it did business out of Andover, Ohio, and had more than 1,000 customers.  January 8, 2014, Jeff Heidnik

submitted a letter of intent to the Blanfords on behalf of Espyville's principal, Marty Whelan, proposing to purchase the assets of Ron-Bon for $140,000, closing to occur on or before May 1, 2014. In the letter, Mr. Heidnik advised he would have his attorney draft a formal purchase agreement upon the Blanfords accepting the terms set forth in the letter of intent. Mr. Blanford signed the letter of intent above the word "acceptance" January 14, 2014.

{¶3} March 18, 2014, Mr. Heidnik submitted the formal asset purchase agreement ("original agreement"). It included several clauses not contained in the letter of intent, which the Blanfords found objectionable. In particular, they objected to a clause committing them to hold Espyville harmless from any and all preexisting liabilities; and, one defining the business being sold as including both the selling of propane and filling propane tanks. Mr. Blanford handwrote that the hold harmless clause would only be effective up to the date the business transferred. He also changed the definition of the business being sold to the delivery of propane tanks, since he wished to continue to sell propane to people who brought tanks to him to be filled. The Blanfords executed this "revised agreement" and returned it to Espyville.

{¶4} April 18, 2014, the Blanfords received an email from Mr. Heidnik, stating: "Please find the attached redline version of our contract with a few adjustments. Review *and if the changes are agreeable* let me know and I will send over a clean version for signatures." (Emphasis added.) In the "redline agreement," Espyville incorporated certain of the Blanfords' handwritten changes outright. However, the definition of the business being sold was restored to that of selling propane, as well as

2

filling propane tanks. Further, Espyville altered the hold harmless clause to once again make Ron-Bon liable for preexisting liabilities after the sale of the business.

{¶5} The redline agreement was unacceptable to the Blanfords. Their counsel informed Espyville's counsel that the counteroffer represented by the redline agreement was unacceptable to his clients, and the business was no longer for sale. Thereafter, Mr. Whelan signed the revised agreement, as submitted by the Blanfords. However, they still refused to go forward with the sale of Ron-Bon.

{¶6} Espyville filed an action for breach of contract and declaratory judgment. Eventually, it amended the complaint. Ron-Bon and the Blanfords filed for summary judgment, which Espyville opposed. June 30, 2015, the trial court granted the motion for summary judgment in a lengthy and detailed opinion. This appeal timely followed, Espyville assigning a single error: "The trial court erred in granting summary judgment to the Defendants/Appellees when the evidence demonstrates that the parties formed an enforceable contract."

{¶7} "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66, * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See e.g.* Civ.R. 56(C).

{¶8} "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield*

3

*Journal Co.*, 64 Ohio St.2d 116, 121, * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359, * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. No. 2002-A-0061, 2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252, * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, * * * (1996)." (Parallel citations omitted.) *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6.

{¶9} This action sounds in contract. In *Spoerke v. Abruzzo*, 11th Dist. Lake No. 2013-L-093, 2014-Ohio-1362, ¶29-30, we stated:

{¶10} "The essential elements of a contract are an offer, acceptance, contractual capacity, consideration (the bargained-for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration. *Adlaka v. Valley Elec. Consol. Inc.*, 11th Dist. Trumbull No. 2007-T-0071, 2008-Ohio-1690, ¶20. For a contract to be enforceable, the parties must have a meeting of the minds as to all essential terms. *Id.*; *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶16, * * *. Unless the parties agree as to all essential terms, no contract exists. *Id.* 'The existence of an enforceable contract is a prerequisite to a claim for breach of contract.' *Ireton v. JTD Realty Invests., L.L.C.*, 12th Dist. Clermont No. CA2010-04-023, 2011-Ohio-670,

4

¶38.

{¶11} "To constitute a valid contract, there must be an offer on the one side and an acceptance on the other resulting in a meeting of the minds of the parties. *Noroski v. Fallet*, 2 Ohio St.3d 77, 79, * * * (1982). Generally, the submission of a purchase order is viewed as being an offer, which may then be accepted or rejected by the offeree. *American Bronze Corp. v Streamway Products*, 8 Ohio App.3d 223, * * * (8th Dist.1982), paragraph one of the syllabus. Further, '(a) reply to an offer (by the offeree) which purports to accept but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counteroffer.' *Foster v. Ohio State University*, 41 Ohio App.3d 86, 88, * * * (10th Dist. 1987), citing 1 Restatement of the Law 2d, Contracts (1981) 145, Section 59. Moreover, the transmission of various amendments to a proposed purchase agreement constitute counteroffers used for negotiating purposes before finalizing the intended agreement. *Hairston v. Goodman*, 8th Dist. Cuyahoga No. 58193, 1991 Ohio App. LEXIS 1176, *9 (Mar. 21, 1991)." (Parallel citations omitted.)

{¶12} In granting summary judgment, the trial court held the redline agreement, since it altered terms submitted by the Blanfords in the revised agreement, constituted a counteroffer by Espyville, which the Blanfords were free to reject. In arguing this was error, Espyville appears to advance two arguments. One seems to be that the letter of intent embodied the contract between the parties, with the various agreements thereafter exchanged merely being the negotiation of particular terms. As Ron-Bon and the Blanfords observe, this argument does not seem to have been presented to the trial court, and we are not required to consider it on appeal. *Chester Props. v. Hoffman*,

5

11th Dist. Geauga Nos. 2001-G-2333 and 2001-G-2334, 2001 Ohio App. LEXIS 4802, *8 (Oct. 26, 2001). Ron-Bon and the Blanfords further cite to *Riolo v. Oak Wood Plaza*, 9th Dist. Lorain No. 04CA008555, 2005-Ohio-2150, wherein the Ninth District upheld the trial court's ruling that a letter of intent signed by the parties did not constitute a binding contract, since it contemplated a further, formal purchase agreement, and did not contain terms essential to the contract contemplated. *Id.* at ¶9-11. Similarly, in this case, the letter of intent contemplated a formal purchase agreement between the parties, and did not contain terms that the further negotiations between them show to have been essential, such as the nature of the business being sold, and the division of liabilities between the parties.

{¶13} This argument lacks merit.

{¶14} More significantly, Espyville cites to case law showing that an enforceable contract may exist, even when various terms of the contract remain to be negotiated, so long as the essential terms of the contract can be divined, and a basis for determining breach exists. *See, e.g.*, *Mr. Mark Corp. v. Rush, Inc.*, 11 Ohio App.3d 167, paragraphs one and two of the syllabus (8th Dist.1983); *Owusu v. Hope Cancer Ctr. of Northwest Ohio, Inc.*, 3rd Dist. Allen No. 1-10-81, 2011-Ohio-4466, ¶17.

{¶15} We are unconvinced the rule applies to this case. The redline agreement sent to the Blanfords altered terms which they had included in the revised agreement. The covering email specifically asked the Blanfords to consider whether these alterations were acceptable to them, before a final agreement was drafted. As the trial court held, the redline agreement was a counteroffer, which the Blanfords were free to reject. *Spoerke*, *supra*, at ¶30; *see also Ohio Bank v. Beltz*, 3rd Dist. Logan No. 8-02-

6

13, 2002-Ohio-4886, ¶24.

{¶16} The assignment of error lacks merit.

{¶17} The judgment of the Lake County Court of Common Pleas is affirmed.

CYNTHIA WESCOTT RICE, P.J.,

TIMOTHY P. CANNON, J.,

concur.